UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 10-213** |
| | * | |
| **VERSUS** | * | |
| | * | **SECTION "L"(2)** |
| **MELVIN WILLIAMS** | * | |
| **MATTHEW DEAN MOORE** | * | |

## ORDER & REASONS

Before the Court is the Government's Motion to Exclude the Defense Expert Dr. Michael Baden for Lack of Timely Notice (Rec. Doc. No. 63). This motion was filed on Thursday, March 31, 2011, and Defendants filed their response on Friday, April 1, 2011. Having reviewed the submitted memoranda and the applicable law, the Court advised counsel on Friday, April 1, 2011 of its intent to deny the motion. The Court now takes this means to explain its ruling.

## I. BACKGROUND

In its previous orders in this case, the Court described the allegations set forth in the indictment, and it now finds it unnecessary to describe those charges again. For the purpose of the present motion, however, the Court finds that it will be useful to set forth the timeline of events that are relevant to the motion. Those are not in dispute.

On August 23, 2010, the Government furnished to Defendants the expert report of Dr. Kris Sperry, whom the Government intends to call as an expert witness at trial. The Government on that day also requested that Defendants provide any tests or reports prepared by defense witnesses. On February 22, 2011, the Government confirmed with Defendants that it intended to call Dr. Sperry as an expert witness at trial. By letter on March 1, 2011, the Government

formally identified its expert witnesses, described the subject matter that the witnesses were expected to cover, provided copies of their curriculum vitae, and once again inquired with Defendants as to whether they intended to call any expert witnesses.

The Government made additional inquiries on March 18, 2011 and March 25, 2011. On the afternoon of March 25, 2011, which was a Friday, Defendants informed the Government that it had identified and retained Dr. Michael Baden as an expert witness. The Government contacted Dr. Baden and was informed that he had been retained by Defendants that very same day. Unsurprisingly, then, on March 25, 2011, Defendants were not in possession of any expert report to give to the Government. Dr. Baden had not yet reviewed any defense material. Instead, as Dr. Baden informed the Government, he was planning to review that material over the weekend. According to Defendants, the reason for the delay in retaining Dr. Baden is financial. Defendants assert that they were able to retain an expert witness only after accumulating the necessary funds.

A flurry of activity occurred over the following week. On Monday, March 28, 2011, the Government and Dr. Baden arranged for an interview on Thursday, March 31, 2011. On Tuesday, March 29, 2011, Defendants formally informed the Government of their intention to call Dr. Baden as an expert witness. At the time, Defendants were still not in possession of an expert report. On Wednesday, March 30, 2011, Defendants provided Dr. Baden's curriculum vitae to the Government, specified the subject matter of Dr. Baden's expected testimony, and informed the Government that Dr. Baden would complete his report the following day. On Thursday, March 31, 2011, Dr. Baden completed his report, and Defendants and the Government received the report on that same day. The Government also conducted the scheduled interview

on that day, during which it was able to question Dr. Baden about his expected testimony.[1]

## II. LAW AND ANALYSIS

### A. Disclosure Obligation Under Rule 16(b)(1)(C)

Since they were amended in 1993, the Federal Rules of Criminal Procedure have imposed on the Government and on criminal defendants reciprocal obligations to make disclosures regarding expert witnesses. Thus, under Rule 16(b)(1)(C), if a criminal defendant requests the Government to make disclosures regarding expert witnesses it intends to use, that defendant must, at the request of the Government, also make the corresponding disclosures to the Government regarding the expert witnesses that he intends to use. *See* Fed. R. Crim. P. 16(b)(1)(C)(i).

The disclosure obligations with regard to expert witnesses constitute only one facet of the overall reciprocal discovery process in the criminal law context. The Government and a criminal defendant may also be required to make available "documents" so long as "the item is within [the party's] possession, custody, or control." *Id.* 16(a)(1)(E) (government), 16(b)(1)(A)(i) (defendant). Similarly, the Government and a criminal defendant may also be obligated to disclose reports of tests and examinations if they are "within the [party's] possession, custody, or control." *Id.* 16(a)(1)(F)(i) (government), 16(b)(1)(B)(i) (defendant).

In this case, the Government urges that Defendants did not comply with their disclosure obligation regarding their expert witness Dr. Baden. The Government stresses that, as of the time it filed the instant motion, it had not yet received the expert report of Dr. Baden. The Court does

---

[1] The Government filed the instant motion around 11:30 a.m. on Thursday, March 31, 2011. The Government received the expert report and conducted the interview after filing the motion.

not find this persuasive. Indeed, the Government's observation ignores the fact that Defendants also did not have the expert report until Thursday, March 31, 2011, the day on which Dr. Baden completed his report. It is true that Rule 16(b)(1)(C) does not specifically mention that an expert report must be in the possession of the criminal defendant. But common sense and logic suggest that a party cannot turn over something that does not yet exist and that is thus not in the party's "possession, custody, or control." *Id.* 16(a)(1)(F)(i), 16(b)(1)(B)(i).

Once this basic reality is taken account, it is clear that the turnaround time in this case was short, and it is difficult to conclude that Defendants have violated their obligation under Rule 16(b)(1)(C). That rule contains "no specific timing requirements." *Id.* advisory committee's note to 1993 amendment. Instead, it contemplates that disclosures are to be made "in a timely fashion." *Id.* Under any reasonable view, the provision of an expert report to the opposing party on the day in which it is completed and within one week of the retention of the expert is a disclosure made in a "timely" manner. *Id.*

In a similar case, the Seventh Circuit agreed with the Government that in that case, it had made a timely disclosure to the criminal defendant "because it turned over the report as soon as it learned the report existed." *United States v. Stevens*, 380 F.3d 1021, 1025-26 (7th Cir. 2004). The Court of Appeals pointedly observed that "[i]n fact, the government could not have produced the report any sooner because it received the report the day it was produced." *Id.* at 1026. The same is true in this case. The Court is unable to conclude that the turnaround time between the production of the report and its provision to the Government was too long.

By complaining that Defendants have produced the report so shortly before the trial, the Government is, in effect, arguing that Defendants have taken too much time in pulling together

the necessary funds to retain their expert witness. The Government is thus urging this Court to read into the Federal Rules of Criminal Procedure a requirement that a criminal defendant who has insufficient funds to retain an expert and who, as a result, needs time to gather those funds in order to exercise his "right to present his own witnesses," *Washington v. Texas*, 388 U.S. 14, 19 (1967), to find those funds and retain an expert as close in time as possible to the moment that the Government has retained its own expert. The Government having cited no specific authority for this proposition, the Court is not at this time persuaded that such a requirement should be read into the rules.

**B. Consequence of Untimely Disclosure Under Rule 16(d)(2)**

Even if Defendants did fail to make a timely disclosure of the expert report, it does not automatically follow that Dr. Baden must be excluded from the trial. Rule 16(d)(2) provides that a court may, among other things, "enter any . . . order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(D). As the Fifth Circuit has recognized, "the district court has broad discretion under this rule." *United States v. Bentley*, 875 F.2d 1114, 1118 (5th Cir. 1989) (citing *United States v. Sarcinelli*, 667 F.2d 5 (5th Cir. 1982)); *accord* Fed. R. Crim. P. 16 advisory committee's note to 1966 amendments (noting that the rule "gives wide discretion" to the district court). "In exercising this discretion, the district court should consider factors such as the reasons why disclosure was not made, the prejudice to the opposing party, the feasibility of rectifying that prejudice by granting a continuance, and other relevant circumstances." *Bentley*, 875 F.2d at 1118.

Assuming *arguendo* that Defendants are at fault for not overcoming their financial constraints quickly enough in their attempt to retain an expert, the Court is unable to find that the

circumstances here warrant "the most extreme sanction possible" -- that of excluding Dr. Baden from testifying at trial. *Id.* First, as noted above, the reason for the delay in retaining Dr. Baden as an expert witness is financial. Defendants have stated that it took time for them to accumulate the necessary funds to retain an expert in this case. The Government does not dispute this, and it does not otherwise suggest that Defendants acted in bad faith. This clearly weighs against excluding Dr. Baden from trial. *See United States v. Garrett*, 238 F.3d 293, 299 (5th Cir. 2000) (holding that exclusion of the Government's evidence was improper in part because the Government did not act in bad faith).

Second, and most importantly, Defendants' inability to gather the necessary funds to hire an expert witness has engendered only a "relatively low level of prejudice," if any. *United States v. Martinez-Perez*, 941 F.2d 295, 302 (5th Cir. 1991). A touchstone in measuring the prejudice suffered by a party is the degree to which an "unfair advantage" has accrued to the party who has not complied with its disclosure obligations. Fed. R. Crim. P. 16 advisory committee's note to 1966 amendment. In this case, the Court finds it difficult to discern any advantage that Defendants might have gained, let alone one that is unfair. Indeed, the Government and Defendants received Dr. Baden's expert report on the same day -- the day on which the report it was completed. Moreover, on that day, the Government was also able to conduct the previously scheduled interview in order to question Dr. Baden about his opinion and expected testimony. Finally, it should be noted that Dr. Baden, if called, would serve as a defense witness. Thus, the Government will have additional time to prepare for Dr. Baden's anticipated testimony.

In its motion, the Government indicates that had it known about Dr. Baden, it would have "considered" calling Dr. Jerry Spencer as a rebuttal witness, but that it is now unable to do so. As

the Government's own motion indicates, however, Defendants have retained Dr. Baden in order to counteract the anticipated testimony of Dr. Sperry. The Government has not asserted that Dr. Spencer has expertise that Dr. Sperry does not have. Nor has it otherwise suggested that Dr. Sperry, if called as a rebuttal witness, would be unable to rebut Dr. Baden's testimony. Instead, as noted above, the Government has merely indicated that Dr. Spencer is a witness it would have "considered" calling as a rebuttal witness. Clearly, the Government in this case has not suffered the degree of prejudice that might otherwise "necessitate[] the most extreme sanction possible." *Bentley*, 875 F.2d at 1118.

**C. Cases Cited by the Government**

In its motion, the Government cites to three cases in support of its argument that Defendants have failed to comply with Rule 16(b)(1)(C) and that the exclusion of Dr. Baden is warranted under Rule 16(d)(2). But a review of the cases indicates that they are distinguishable. In *United States v. Petrie*, 302 F.3d 1280 (11th Cir. 2008), the defendant "waited until Friday afternoon prior to the commencement of trial . . . to disclose his expert to the government," *id.* at 1288. Here, in contrast, Defendants informed the Government that they had retained Dr. Baden slightly more than a week before trial and on the day that they, in fact, retained Dr. Baden. They also formally notified the Government of their intention to call him the Tuesday before trial. In addition, as noted above, they provided to the Government the expert report on the day on which it was completed, and the Government was able to interview Dr. Baden on that day as well. The timeline of relevant events in this case is thus clearly different from that in *Petrie*.

To be sure, the timeframe here may be more analogous to that of the second case cited by the Government. In *United States v. Hoffecker*, 530 F.3d 137 (3d Cir. 2008), the defendant made

his disclosure three business days before trial, *id.* at 184. But what distinguishes *Hoffecker* from this case is that the defendant in *Hoffecker* sought to call three different experts. *See id.* In concluding that the Government did not have enough time to prepare, the Court of Appeals noted that the case was "complex[]." *Id.* at 187. And the defendant in that case did not even "attempt[] to explain why his notice was late." *Id.* at 188. The Government in this case has not indicated that the case is so complex that it cannot prepare for one witness that, by its own account, is meant to counteract the testimony of its own expert witness. Moreover, Defendants in this case have explained that they were not able to retain an expert until they had overcome financial constraints.

Finally, the Government cites to the D.C. Circuit's decision in *United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008), but the analysis in that case is not on point. It is true that in explaining the circumstances of the case, the Court of Appeals described the apparent delays that occurred in that case, *see id.* at 1371. But the D.C. Circuit's holding in that case is squarely focused on the substantive deficiencies in the expert's notice – namely, the apparent failure of the expert to even state specify the opinion that he was going to provide at trial. *See id.* at 1371-72. Here, the Government has not alleged that the content of Dr. Baden's report or summary leaves more to be desired. Moreover, in determining what consequence were to flow from the violation of Rule 16 that it had identified, the D.C. Circuit in *Day* found it significant that the defendant had acted in bad faith. *Id.* at 1372. As noted above, the Government in this case has not alleged, and the Court does not find, that Defendants have acted in bad faith. Accordingly, *Day* is also inapposite.

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Government's Motion to Exclude Defense Expert for Lack of Timely Notice (Rec. Doc. No. 63) is hereby **DENIED**.

New Orleans, Louisiana, this 4th day of April, 2011.

_____
UNITED STATES DISTRICT JUDGE